## CIRCUIT COURT OF THE CITY OF WINCHESTER

Shenandoah Publishing House, Inc.

v.

Winchester City Council et al.

June 20, 1995

Case No. (Chancery) 95-156

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on June 17, 1995, for trial on a newspaper's petition for injunction and sanctions against the Winchester City Council for violations of the Virginia Freedom of Information Act. The parties appeared with their counsel, J. David Griffin, Esquire, for the complainant; and Mark K. Flynn, Esquire, for the defendants. Whereupon argument was heard on the Defendants' Demurrer, and, upon consideration whereof, it is adjudged and ordered that the Demurrer is overruled for the reasons stated in court.

Whereupon, evidence was heard *ore tenus* and argued by counsel. At the conclusion of the Plaintiff's evidence the Defendants moved to strike the Plaintiff's evidence, upon consideration whereof, the Court did strike the Plaintiff's evidence as to the alleged failure to give notice of the June 6, 1995, public meeting as required by Virginia Code § 2.1-343, but did otherwise deny the motion for the reasons stated in court.

Upon further consideration, the Court has made the following decision to deny the petition for an injunction.

### I. *Statement of Facts*

The following facts are found by the greater weight of the evidence.

The complainant Shenandoah Publishing House is a Virginia corporation which publishes the *Northern Virginia Daily*, a daily newspaper of general circulation in the City of Winchester, hereinafter called the *Daily*.

The City of Winchester is a local governmental unit chartered by the Virginia General Assembly.

At the June 5, 1995, meeting of the Finance Committee meeting of the Winchester City Council, it was announced that, following the Health, Education, and Welfare Committee meeting the following day, there would be a meeting among certain members of City Council and members of the City Parks and Recreation Board.

While the *Daily* complained about the notice that it received of the June 6, 1995, meeting, one of its reporters attended both the June 5, and June 6, 1995, meetings, and in the *Daily* article, published on the morning of the June 6, 1995, meeting, the following report of the June 5 meeting appeared:

> The [Finance] committee also met in closed session for about 30 minutes to discuss personnel matters. Afterward, City Manager Edwin C. Daley said councilmen, but not the entire council, will meet with members of the Parks and Recreation Board this morning [June 6].

This is the June 6, 1995, meeting about which the *Daily* claims that it did not receive the proper notice and about whose closure it also complains.

On June 6, 1995, Mayor Chrisman and council members Partlow, Smith, Omps, Ashby, Prosser, and Findley attended a meeting at which Mr. Partlow presided.

At the June 6, 1995, meeting, the City Council members present voted to adjourn into executive session under Virginia Code § 2.1-344(A)(1) for the stated purpose of "discussion, consideration or interviews of respective candidates for employment, assignment, appointment, promotion, performance, demotion, salaries, disciplining or resignation of specific public officers, appointees, or employees of any public body." No additional elaboration of the purpose of the closed session was stated. The motion to close the meeting passed, and the press was excluded from the June 6, 1995, closed meeting.

At the June 6, 1995, closed session, the members of the Winchester City Council, who were present, advised certain members of the City's Parks and Recreation Board, that it was probable that the method of appointment to the Parks and Recreation Board was going to be changed and that the

Director would then report directly to the City Manager instead of to the Board. There was no debate during the closed session, and no action was taken at the closed session.

The Winchester City Parks and Recreation Board is a public body, which oversees the City's Parks and Recreation Department, and the Director is a city employee as are the other members of the Winchester Parks and Recreation Department. The discussion was limited during the closed session to advising the Parks and Recreation Board and Director of the contemplated changes and the reassignment of the Director.

Upon returning to open session on June 6, 1995, the council members present duly certified that no improper subjects had been discussed during the closed session, as required by law, and a resolution was passed in the public session to recommend to City Council that changes be made in the method of appointment of members of the Parks and Recreation Board and in the organization of the Parks and Recreation Department.

On June 13, 1995, the Winchester City Council duly promulgated the changes in a public meeting which the park personnel had been told on June 6, 1995, were imminent, and which were the subject of the June 6, 1995, resolution.

## II. *Conclusions of Law*

The Complainant must prove the alleged violations of the Freedom of Information Act by the greater weight of the evidence. *Richmond Fred. & Pot. Corp. v. Little*, 247 Va. 309, 440 S.E.2d 908 (1994).

The Virginia Freedom of Information Act "shall be liberally construed to enable citizens to observe the operations of government and that the exemptions shall be narrowly construed 'in order that no thing which should be public may be hidden from any person'." *City of Danville v. Laird*, 223 Va. 271, 276, 288 S.E.2d 429 (1982); *see also* Va. Code § 2.1-340.1. The subjects which may be discussed in a closed session of a public body are enumerated in detail in Virginia Code § 2.1-344, and the material provision in this case is § 2.1-344(A)(1), which provides that:

> Discussion, consideration, or interviews of prospective candidates for employment; *assignment, appointment,* promotion, performance, demotion, salaries, disciplining, or resignation *of specific public* officers, *appointees or employees of any public body* . . . .

Virginia Code § 2.1-343 provides that "notice including the time, date, and place of each [public] meeting shall be furnished to any citizen of the Commonwealth who requests such information." The *Daily* had requested notice of all public meetings, and the announcement of the City Manager on June 5, 1995, which the *Daily* reported on and responded to was sufficient legally to reasonably inform the *Daily* of the meeting on June 6, 1995.

The meeting of the *ad hoc* group of city councilmen on June 6, 1995, was a public meeting as defined by Virginia Code § 2.1-341, but it was not a meeting of the City Council of the City of Winchester as claimed by the *Daily*. The Winchester City Parks and Recreation Board is a public body. *See* Virginia Code § 2.1-341. The reassignment of the director and employees of the City Parks and Recreation Department may be discussed in a closed session pursuant to Virginia Code § 2.1-344(A)(1). Incident to that discussion, the Board members and employees of the Department of Parks and Recreation could also be informed as to the contemplated change in the manner of the Board's appointment to negate the adverse inference that the change derived from dissatisfaction with their performance. Accordingly, the subject matter of the closed session of the City Council on June 6, 1995, was one which could properly be discussed in a closed session, no action was taken in the closed session, and the discussion was properly restricted to the permitted subject.

Virginia Code § 2.1-344.1 prescribes the statutory formula for closing a public meeting to discuss an authorized subject, and there are three elements in that formula: (1) a motion passed by a majority in attendance; (2) a statement of the general purpose for the closed meeting and the subject to be discussed; and (3) a reference to the specific statutory section authorizing the closed session. The statute specifically provides, in pertinent part:

> No meeting shall become an executive or closed meeting unless the public body proposing to convene such meeting shall have taken *an affirmative recorded vote in open session* to that effect, *by motion stating specifically the purpose* or purposes which are to be the subject of the meeting, *and reasonably identifying the substance of the matters to be discussed.* A statement shall be included in the minutes of the open meeting which shall make *specific reference to the applicable exemption or exemptions from open meeting requirements* provided in subsection A of § 2.1-344 or in § 2.1-345, and the matters contained in such

motion shall be set forth in those minutes. *A general reference to the provisions of this chapter or authorized exemptions from open meeting requirements shall not be sufficient to satisfy the requirements for an executive or closed meeting.*

In this case the statutory prescription for closing the meeting was not strictly followed, because "only a general reference" tracking the language of § 2.1-344.1 was given as the reason for the closed session. Although it had been previously announced on June 5, 1995, that there would be a meeting with members of the Parks and Recreation Board, no specific purpose was stated which reasonably identified the subject matter to be discussed at the closed session incident to motion to close, so element two of the statutory formula was missing. Although the Supreme Court ruled in *Nageotte v. King George County*, 223 Va. 259, 267, 288 S.E.2d 423 (1982), that "it is not necessary to identify the personnel in convening an executive session to consider personnel matters. We perceive no legislative intent to require such an unnecessary and disruptive act as a prerequisite to invoking this exemption [§ 2.1-344(A)(1)]," nonetheless, the general subject matter of the closed session must be stated. For example in this case the Chairman of the meeting should have stated that we are going into a closed session to advise the members of the City Parks and Recreation Board and certain employees of that Department of a potential change in the method of the Board's appointment and the reassignment of some of the department's employees, which are personnel matters for which a closed meeting may be held pursuant to Virginia Code § 2.1-344(A)(1). Instead only the applicable code section was stated as the reason for closing the meeting, which was a technical violation of the statute.

Virginia Code § 2.1-346 provides that violations of the Virginia Freedom of Information Act may be enforced by injunction and that "a single instance of denial of the rights and privileges conferred by the chapter shall be sufficient to invoke the remedies herein granted. If the Court finds the denial to be in violation of the provisions of this chapter, the petitioner shall be entitled to recover reasonable costs and attorney's fees from the public body if the petitioner substantially prevails on the merits of the case, unless special circumstances would make an award unjust." Virginia Code § 2.1-346.1 further provides that civil penalties "not less than twenty-five dollars nor more than one thousand dollars" may be imposed upon any individual where the Court finds that "a violation was willfully and knowingly made . . . ." As the Supreme Court stated in *Hale v. Washington County School Board*, 241 Va. 76, 81, 400 S.E.2d 175 (1991):

Although Code § 2.1-346 permits injunctive relief upon proof of a single violation of the Act, based upon the inference that future violations will occur, such relief remains discretionary with the court. It is an "extraordinary and drastic remedy [and] is not to be casually or perfunctorily ordered." [Cites omitted.] It will not be granted unless the Court finds that the violation [of the Freedom of Information Act] was willful, knowing, and substantial.

The procedural violation in this case was minor and unintended. The letter, but not the spirit or the substance of the Freedom of Information Act, was violated. Therefore, no injunction or order for sanctions will issue. Moreover, since the Defendants prevailed on the notice issue and the substantive issues, the *Daily* did not substantially prevail. Therefore, the prayer for reasonable attorney's fees and costs is denied. *See Hale v. Washington County School Board*, 241 Va. 76, 400 S.E.2d 175 (1991) (if plaintiff substantially prevails, error not to award attorney's fees and costs).

## III. *Decision*

For the foregoing reasons it is adjudged and decreed that the Plaintiff's motion to dismiss Carolyn Griffin as a party Defendant is granted, the Bill of Complaint is dismissed with prejudice, and each party shall pay their respective attorney's fees and costs.